IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action |
| v. | No. 3:21-CR-14 |
| STEFAN EBERHARD ZAPPEY | |

## GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW the United States of America, by and through Ryan K. Buchanan, United States Attorney for the Northern District of Georgia and the undersigned Assistant United States Attorney and Trial Attorney and submits the Government's sentencing memorandum requesting that this Court sentence defendant Stefan Eberhard Zappey to a Guidelines term of life imprisonment.

### I. FACTUAL BACKGROUND

Between 2001 and 2021, defendant was a teacher at a U.S. Department of Defense school near Stuttgart, Germany where he taught a German language immersion class to first through third grade students who were dependents of U.S. military Servicemembers serving overseas. Outwardly, defendant was a friendly, outgoing, and encouraging teacher who was well-liked by his students, their parents, and his fellow faculty members. His classroom was a cozy and

1

informal environment where young children quickly learned to speak German. He was an affectionate teacher who made his students feel special. He gave his favorite students gifts and hosted going away parties when their parents were transferred to a new duty station. He went to his students' soccer games and attended their first communions. Parents were happy to have their children in his class and even invited defendant to their homes to socialize. In 2007, the Department of Defense named him Teacher of the Year for his school district.

However, underneath this benevolent façade was a sexual predator who used his proximity with children to sexually abuse at least four young students and evade detection for over a decade.

Between 2006 and 2007, defendant sexually abused Minor Victim 1 multiple times when the child was between seven and eight years old. In the spring of Minor Victim 1's second grade year, she stayed in defendant's classroom during recess to read a book on the couch. While Minor Victim 1 laid on the couch, defendant put his hand inside her shorts and directly touched her genitals. He sexually abused her in a similar manner on two more occasions. At trial, Minor Victim 1 testified that "it felt wet" when defendant touched her genitals. Minor Victim 1 did not disclose this abuse at the time because she knew that defendant was a well-respected teacher. PSR ¶18.

Defendant sexually abused Minor Victim 2 multiple times between 2008

2

and 2010 when the child was between seven and nine years old. On multiple occasions, defendant had Minor Victim 2 sit on his lap during reading time, placed his hands down the front of her pants, and directly touched her genitals. Minor Victim 2 believed that she was defendant's "favorite" student and initially was unaware the sexual abuse was wrong. At trial, Minor Victim 2 testified that it felt "warm" when defendant touched her genitals. Eventually, the sexual abuse made Minor Victim 2 uncomfortable, and she began feigning illness to be excused from his class. PSR ¶20.

Defendant sexually abused Minor Victim 3 multiple times between 2007 and 2008 when the child was between eight and nine years old. PSR ¶22. At trial, Minor Victim 3 testified that defendant desensitized[1] her to touch by hugging her every day, having her sit on his lap multiple times a week, and making her feel "special" by giving her gifts. Defendant's touching escalated to sexual abuse when he put his hands up the front of her shirt to touch her breasts and inside her underwear to touch her genitals. Minor Victim 3 testified that it made her feel special when defendant touched her.

Defendant sexually abused Minor Victim 4 multiple times between 2009 and 2010 when the child was between eight and nine years old. PSR ¶14. Minor Victim 4 testified that she went behind defendant's desk to receive assistance on

---

[1] At trial, defendant's expert Dr. Tillitsky testified that "touch desensitization" is a grooming strategy where the touching "becomes more and more progressive and leads to sexual abuse."

lessons and often leaned on his legs and sat on his lap. When she was behind defendant's desk, defendant put his hand inside her underwear and directly touched her genitals. Minor Victim 4 testified that she was jealous when defendant paid more attention to other students and stated that, "if anything, I was happy to get attention from him."

Defendant also touched other students inappropriately. One former student stated that defendant placed his hand down the back of her pants to touch her "butt crack." PSR ¶21. At trial, this former student testified that the touching made her feel "dirty" and "exposed." She ultimately asked defendant to stop touching her and began wearing clothing that made it more difficult for defendant to touch her back, stomach, and buttocks.

Another former student testified that defendant touched her under her clothes in 2009 when she was approximately six years old. The child reported the touching to her parents, who then reported the touching to Patch Elementary administrators and asked that their child be transferred to a different class. At trial, this former student testified that, at the time, she was upset that she was removed from defendant's class. *See* PSR ¶20. Patch administrators did not take any disciplinary or administrative action against defendant after this report.

Additionally, defendant's co-workers frequently observed him touching students in inappropriate ways, including running his fingers through girls' hair,

sitting students on his lap, hugging students, and letting students wrap their legs around him. PSR ¶16, 17. Defendant's co-workers reported this concerning behavior to Patch administrators multiple times. PSR ¶16. As before, Patch Elementary did not take any disciplinary or administrative action against defendant after these reports.

Years later, a Patch Elementary teacher returned to the United States during summer vacation in 2020 and saw Minor Victim 4 at a mutual friend's home. While reminiscing about her time in elementary school, Minor Victim 4 stated that she "hated" defendant and disclosed that he touched her inappropriately. The teacher reported Minor Victim 4's disclosure to Army criminal investigators, who began an investigation which led to the criminal charges in this case. PSR ¶12.

On October 4, 2022, a grand jury charged defendant by second superseding indictment with four counts of aggravated sexual abuse of a child in violation of 18 U.S.C. § 2251(c) and four counts of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(5). On January 18, 2023, a jury returned a verdict finding defendant guilty of all counts.

## II.   THE SENTENCING GUIDELINES

The Sentencing Guidelines serve as the "starting point and the initial benchmark" in determining the appropriate sentence and the sentencing court

must "remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The PSR correctly calculates defendant's base offense level under USSG §2A3.1 and correctly applies a two-level increase where the victim was in the custody, care, or supervisory control of the defendant. The PSR appropriately groups the counts into four groups and correctly applies the multiple count adjustments. After application of a five-point increase under USSG §4B1.5,[2] defendant finds himself at the highest offense level available under the Sentencing Guidelines for good reason: he is a repeat sex offender against multiple minors who should serve a lengthy term of imprisonment.

## III.   THE SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

In view of the sentencing factors under Section 3553(a), no circumstances genuinely justify a downward variance or departure from the Guidelines. Defendant's sentence must accurately reflect the seriousness of his sexual abuse of at least four young children for over 4 years. A lengthy term of imprisonment which extinguishes defendant's access to children is the best way to protect the public. Further, a Guidelines sentence would send an unequivocal deterrent

---

[2] USSG §4B1.5(b) applies where "the defendant engaged in a pattern of activity involving prohibited sexual conduct." A "pattern of activity" is two separate occasions of prohibited sexual conduct with a minor "without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion." USSG § 4B1.5 cmt. n. 4(B); *see also United States v. Fox*, 926 F.3d 1275, 1281 (11th Cir. 2019) ("this Court specifically contemplated that the underlying offense of conviction could be a basis for a § 4B1.5(b)(1) enhancement"). This enhancement reflects Congress' intent "to ensure lengthy incarceration for offenders who engage in a pattern of activity involving the sexual abuse or exploitation of minors." USSG § 4B1.5, cmt. backg'd.

message to would-be abusers of children. A Guidelines sentence is sufficient—but not greater than necessary—to accomplish the aims set forth in Section 3553(a). The Court should therefore sentence defendant to life imprisonment.

### A. The History and Characteristics of the Defendant Do Not Merit a Lenient Sentence

In determining defendant's sentence, the Court should find that defendant's history and characteristics do not mitigate his recurrent sexual abuse of his young students. Rather, his history and characteristics demand a lengthy term of imprisonment.

Defendant is a well-educated and appropriately socialized adult with a supportive, loving family. Defendant's upbringing appears to have been free from social or economic disadvantages experienced by many other defendants. He is physically healthy and does not suffer from mental health conditions which have any meaningful bearing on his offense conduct. Defendant's history and characteristics show that he had all the social tools necessary to abstain from illegal conduct, but nevertheless chose to sexually abuse multiple young children.

Further, an examination of defendant's circumstances near the time of his criminal conduct reveals an inexplicable duality. While defendant fondled the genitals of young children, he was in an age-appropriate relationship with his spouse. PSR ¶74. While he desensitized children to inappropriate touch, he

7

received an award for teacher of the year. On one hand, defendant was "nice and seemed considerate and attentive." PSR ¶20. On the other, he persistently sexually abused minor children. In view of his history and characteristics, defendant's criminal conduct is disturbing and truly inexplicable.

Additionally, while defendant is 57 years old, the Court should find that the nature of his criminal conduct outweighs any age-related concerns. *See United States v. Fox*, 926 F.3d 1275, 1282 (11th Cir. 2019) (statutory maximum 360-month sentence not unreasonable for 60-year-old defendant convicted under 18 U.S.C. § 2251(a)). Defendant's history and characteristics therefore merit a Guidelines sentence.

### B. Lengthy Imprisonment is Necessary to Reflect the Seriousness of the Offense

Defendant's victims were young, impressionable, and defenseless. During trial, the victims testified that, at the time, they did not even know that defendant's conduct was criminal. Indeed, defendant's grooming of these children desensitized them to the point where they were unable to distinguish appropriate touch from inappropriate touch. Defendant's shameless exploitation of these vulnerable children substantially elevates the seriousness of his crimes. To that end, the Eleventh Circuit has held "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses[.]" *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) (discussing how courts have upheld

lengthy sentences in cases involving child sex crimes as substantively reasonable).

Several other circumstances further aggravate his criminal conduct. First, defendant had multiple victims. He sexually abused at least four young children and arguably sexually abused two others. *See* PSR ¶¶20, 21. Second, he sexually abused each victim multiple times. For example, Minor Victim 2 testified that defendant sexually abused her approximately once per month for nearly three years. PSR ¶19. Finally, defendant's criminal conduct was not isolated; it persisted over a period of approximately four years. These circumstances show that defendant's crimes are undoubtedly serious and merit harsh punishment.

**C.     A Severe Sentence is Necessary to Deter Similar Criminal Conduct**

Congress, the Supreme Court, and the Sentencing Commission find general deterrence to be an important factor when considering an appropriate sentence in child sexual abuse cases. "The more serious the crime and the greater the defendant's role in it, the more important it is to send a strong and clear message that will deter others." *United States v. Irey*, 612 F.3d 1160, 1212 (11th Cir. 2010), *cert. denied*, 131 S. Ct. 1813 (2011). Indeed, general deterrence aimed at "protecting the children who are victimized … are factors that should have been given significant weight at sentencing[.]" *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) (discussing deterrence in child pornography cases). A Guidelines

9

sentence is the best way to send a message that will deter others—especially teachers and other caretakers for children—from committing similar crimes.

## IV.   RESTITUTION

Minor Victim 3 and Minor Victim 4 informed undersigned counsel that they intend to request restitution but have not finished compiling documentation to support these claims. Section 3664(d)(5) provides "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." The Government accordingly requests that the Court set a hearing date within 90 days of sentencing for the determination of restitution.

## V.   CONCLUSION

For the reasons stated above, the Government respectfully requests that the Court impose a Guidelines sentence of life imprisonment for defendant Stefan Eberhard Zappey.

Respectfully submitted,

KURT R. ERSKINE
*United States Attorney*

LEANNE M. MAREK
*Assistant United States Attorney*
Georgia Bar No. 270935

EDUARDO PALOMO
*U.S. Department of Justice*
*Child Exploitation and Obscenity Section*
*Trial Attorney*
Texas Bar No. 24074847


600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181